HEMAN A. WATERMAN, ADM'R OF H. S. HOXIE'S
ESTATE, *v.* JED P. CLARK AND
GEORGE ASHLEY.

SAME *v.* SAME.

*Injunction.   Trespass.   Lease.   Forfeiture.*

1.  Both parties claimed certain property, the plaintiff had taken possession, and the
    defendant had procured an injunction.  Thereupon it was agreed that the de-
    fendant might retake possession, that the proceedings in chancery should be
    abandoned, that the rights of the parties should remain *in statu quo*, and that
    they should attempt to negotiate a settlement.  The attempt was made, but no
    settlement effected; *Held*, that neither party gained or lost anything pending
    the negotiations.
2.  The law does not favor forfeitures; it will not declare one upon implication;
    strict proof is always required; thus, the plaintiff's intestate leased to the de-
    fendant's grantors one acre of land for the purpose of building thereon a cheese
    factory.  The buildings were erected and the business of making cheese was
    continued for several years down to and including the season of 1875.  The
    lease contained this clause:  " If at any time said company wish to discontinue
    entirely and abandon said business, then I agree that for the space of one year
    said company, and after a vote of said company, may remove off of said
    premises all buildings."  January 11, 1877, the company voted to sell the prop-
    erty;  and February 22, that the directors be permitted to run the factory at
    the expense of the patrons.  It was sold at auction in August, by a committee,
    one of which was the lessor, acting for the company; *Held*, that the vote did
    not indicate a purpose to abandon the business; that there was no forfeiture;
    and that the defendants had one year from August, 1877, to remove the build-
    ings.

TRESPASS for removing an ice house, hog house, whey
vats, etc.   The two cases were tried together, April Term,
1885, TAFT, J., presiding.   Judgment for the plaintiff.
    The case is stated in the opinion.

*Roberts & Roberts* and *C. W. Witters*, for the defendants.
    The right of the defendants to remove the structures is
to be determined as it stood January 26, 1878, when the

plaintiff entered and excluded the defendants. A mere omission to occupy the premises, or cessation of the business for a year, cannot work a forfeiture under the lease; but only a "wish to discontinue entirely and abandon," etc., and that wish indicated by a vote. There was no such vote. *Cong. Soc'y* v. *Stark*, 34 Vt. 243; *Patchin* v. *Stroud*, 28 Vt. 394; Rob. Dig. 542.

*P. K. Gleed*, for the plaintiff.

The plaintiff claims that when one year had elapsed after the vote to sell was taken, the defendant's rights to remove the buildings had ceased. They were not fixtures. *Lee* v. *Risdon*, 7 Taunt. 188; *Quincy, ex parte*, 1 Atk. 477; 2 Add. Cont. 431; 1 Chit. Cont. 495.

The opinion of the court was delivered by

WALKER, J. These two actions were for breaking and entering the same close on the 2d and 27th days of November, 1883, and removing certain structures and manufacturing fixtures erected thereon under the lease referred to; and the same principles of law are applicable to both cases.

The lease, under which the plaintiff claims that the lessee's right to remove the structures and fixtures sued for in these actions, had become forfeited by neglect to remove the structures and fixtures at some time earlier than January 26, 1878, was given by Horace L. Hoxie, the plaintiff's intestate, running to the Milton Falls Cheese Factory Company and its assigns. By it the intestate demised a certain piece of land in Milton to be used for a site for a cheese factory, or butter and cheese factory, as long as said company and its assigns wished to use the same for such purpose. It contained the following agreement of the intestate, viz.: "If at any time said company wish to discontinue entirely and abandon said business, then I agree that for the space of one year said company, and after a vote of said company, may remove off of said premises all build-

ings and other property put thereon by said company," etc., and a corresponding covenant on the part of the company to remove, within one year after the company may vote to relinquish or abandon said business, all buildings or other property put upon said premises by the company, and then to surrender the peaceable possession to the intestate, his heirs, etc. Said lease was dated April 15, 1868, and signed and sealed by the parties thereto, and duly acknowledged. Said Horace L. Hoxie was a member of said company.

The said company went into possession of the demised premises under said lease and erected thereon certain buildings and manufacturing fixtures which were used by it in the manufacture of cheese thereon, and occupied the same for several years following, including the season of 1875.

On the 30th day of August, 1877, said Hoxie and B. Fairchild, a committee of said company, sold at auction to Jed P. Clark and G. W. Crown all the buildings, fixtures, and all other property of the company, pursuant to a vote of the company passed at a meeting held January 11, 1877, to sell the factory and all its property. At the time of sale, said committee gave said purchasers a memorandum in writing of the sale of the factory and all the property of the company subject to the conditions of the lease; and subsequently said committee delivered to said purchasers a deed of the property sold them, signed by them as agents for the company. After their purchase said Clark and Crown took possession of the factory and other property and managed it.

This sale and conveyance embraced all the property of the company, and included therein said lease; and all the rights of the company under it became vested in the purchasers as the assignees of the company, and, for the remainder of the term demised, the rights of the purchasers in the premises were the same as those demised to the company and were controlled by the same covenants. At the time of sale no notice was given to the purchasers by Hoxie or other person of any claim that the company had aban-

doned the business for which the land was leased, and that to secure the structures and fixtures, which they were buying, from forfeiture, the same must be removed within about four months' time. It is apparent that at the time of sale none of the original parties to the lease understood or claimed that there had been an abandonment of the business by the company.

Horace L. Hoxie died in December, 1877, without having made any claim adverse to the rights of the purchasers to the property purchased of the company.

On the 26th day of January, 1878, the plaintiff, having been appointed administrator of the estate of Hoxie, took possession of the cheese factory and other structures on the premises, and excluded Clark and Crown therefrom, and informed them that he had taken possession under a claim of title, and insisted that the right of the company and of Clark and Crown to the property was forfeited. Thereupon Clark and Crown brought a bill in chancery against the plaintiff, and procured from a chancellor an injunction, which was not served by reason of an agreement, made between them and the plaintiff, that Clark and Crown might re-take possession without prejudice to the claim of right set up by the plaintiff, with a view of making a settlement of the question in dispute. Thereupon Clark and Crown went into possession of the property again and ran the factory during the season of 1878. Thereafter neither party occupied the property, but they insisted upon their respective claims and continued to negotiate in respect to the property down to November, 1883, when the efforts to settle proving ineffectual, the defendant Clark, and defendant George Ashley, who had become the owner of Crown's interest by purchase, removed the property in question under their claim of right, doing no unnecessary damage.

Had the injunction been served and the rights of the parties to the property then in controversy, and now in-

volved in these suits, been determined in due course in the
Court of Chancery, the rights of the parties pending the
proceedings in chancery would have remained *in statu quo.*
Instead of serving the injunction the parties mutually stipu-
lated that their respective rights should remain *in statu quo*
pending their negotiations for a settlement, and abandoned
the proceedings in chancery. The agreement entered into
by the parties to remove the necessity of serving the in-
junction was intended to take the place of, and have the
same effect as, a writ of injunction duly served, to preserve
the subject of controversy in its then condition, and pre-
vent the doing of any act whereby the respective rights in
controversy might be endangered. Under it the parties
expected that, during their negotiations, their respective
rights to the property would be preserved and continued as
they were on the 26th day of January, 1878.

It was competent for the parties to so agree; and their
said agreement had the effect of an injunction *pendente lite.*
By it their rights to the property in issue were preserved
*in statu quo* pending their negotiations.

Neither party gained or lost any rights in or to the prop-
erty in issue pending the negotiations under their said
agreement, and their rights in and to the property were
the same when it was removed by the defendants in Novem-
ber, 1883, as they were on the 26th day of January, 1877,
and must be determined on the issue here as they stood
at that time.

So the important question is, had the lessees or their
assigns on the 26th day of January, 1878, forfeited their
rights to the property in issue?

The law does not favor forfeitures. It will not declare
one upon implication; strict proof is always required.

If the company or their assignees had then been divested
of all right to remove the structures in question by reason
of a forfeiture under the terms of the lease, it must clearly
appear from their acts; either that the company had voted

to relinquish and abandon the business for which the land was leased, or done that which was equivalent to such a vote earlier by a year than the 26th day of January, 1878.

It is contended by the plaintiff that the vote of the company, passed on the 11th day of January, 1877, to sell the cheese factory and all the property belonging to the company, was equivalent to a vote to relinquish or abandon the business for which the land was leased, and that the year in which the company and its assigns had to remove the structures and property put thereon by the company, began to run from that date, and had expired before the plaintiff took possession January 26, 1878. We do not think that was the intention of the company in passing the vote, nor do we think that a fair construction of the vote will uphold the plaintiff's contention. The vote expresses a desire to sell only. It was not a sale. It does not indicate a purpose to abandon the business. It looks to a continuance of the business by an assignee if sold. It does not indicate a purpose of the company to go out of the business if the property was not sold in pursuance of the vote. There is nothing in the record of the meeting of January 11, 1877, expressive of a determination to abandon the business.

The inference from the vote is more that the company intended to go on with the business if the sale was not accomplished; and that this was the company's purpose is made manifest by the record of the warning for the meeting dated February 14, 1877, to be held February 22, 1877, to consider the propriety of running the factory the coming season, signed by H. L. Hoxie and H. Caswell, directors, and the record of the vote of the meeting held February 22, under said warning, permitting the directors to run the factory at the expense of the patrons.

Previous to the sale of the property, August 30, 1877, the company had passed no vote indicative of a purpose to relinquish or abandon the business, nor taken any action which was equivalent to such a vote, so that the year in

Waterman *v.* Clark.

which the company or its assignees had a right to remove their property from the premises of the intestate did not begin to run earlier than August 30, 1877.

It is clear that no purpose to abandon the business on the part of the company antedates this sale. Assuming, then, that the sale was equivalent to a vote to abandon (which it is not necessary to decide), the year in which Clark and Crown, assignees of the company, would have to remove the buildings and other "fixtures for manufacturing" from the land of the intestate, did not expire until August 30, 1878. It follows, therefore, that on the 26th day of January, 1878, there had been no forfeiture of the structures and manufacturing fixtures in question in these suits at bar, and the plaintiff, on the 26th day of January, 1878, had no right to the possession of them. His possession was premature and without right and against the right of said assignees.

And as we hold that the rights of the parties remained during the armistice for negotiations, the same as they were on the 26th day of January, 1878, the entry of the defendants upon the premises and removing said structures and manufacturing fixtures, November 2d and 27th, 1883, (the trespasses complained of,) was lawful and not against the right of the plaintiff.

Judgment reversed, and judgment for the defendants in each case.